## Wytheville.

### SMITH *v.* PACKARD, TRUSTEE.

#### July 1, 1897.

1. ASSUMPSIT—*General and special counts—Special contract—Substantial compliance—Measure of damages.*—In an action of *assumpsit* upon a special contract for work performed by the plaintiff for the defendant, where the declaration contains the common counts and also special counts on the contract, if the plaintiff prove a substantial, though not strict, compliance with the contract alleged, and that the defendant has accepted the work as done, and received benefits therefrom, the plaintiff is entitled to recover the contract price of his work less such sum as will fully compensate the defendant for imperfections in the work done or materials used.

2. CONTRACTS—*Work not done according to—Objections—Acceptance of work.*— When work is done under a special contract, if not done in accordance with the contract objection on that account should be made at the time. The acceptance of the work is an admission that it is of some benefit to the party accepting, and that the workman is entitled to some remuneration.

3. VERDICT—*Responsive to issue—Case at bar.*—The verdict in the case at bar is responsive to the issues made by the pleadings. It is free from confusion and there was no difficulty in entering judgment upon it. The pleas upon which issues were joined were *non-assumpsit*, payment, and set-offs. The verdict found for the plaintiff, and assessed the amount of his damages, and also fixed the amount allowed the defendant on his set-offs. This was all that was necessary.

Error to a judgment of the Hustings Court of the city of Roanoke, rendered March 15, 1895, in an action of *assumpsit*, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Scott & Staples*, for the plaintiff in error.

*Hansbrough & Hall*, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This suit grows out of a contract entered into May 23, 1893, between plaintiff in error, C. G. Smith, the proprietor of the Hotel Ponce de Leon, Roanoke, Va., and the Southern Electric Company, of Baltimore, Md., whereby the latter undertook to wire and equip the hotel premises for electric lighting.  The contract was made by a correspondence between the parties.  The proposal of the Southern Electric Company, which was accepted by the plaintiff in error, set out minutely the work it proposed to do, and the material to be used and the character thereof, and concluded as follows: ' 'This wiring also includes all necessary safety devices, cut outs, &c., to make this a perfect and workmanlike installation. *   *   *  We guarantee our work to be first-class in every respect throughout, and to meet the approval of the officers of the Roanoke Electric Light & Power Co., price as above $750.   *   *   *   All work to be done in accordance with the rules and regulations of the National Board of Fire Underwriters governing same, and subject to their inspection and approval.''   On the 15th of June, 1893, the appellant ordered certain work to be done and material furnished, amounting to $56.59, to be paid for as extra work.  He was present all the time during the progress of this work, and accepted it as done by the Southern Electric Company, and continued to use it without objection, the company claimed, till after this suit was brought in February, 1894, in the Corporation Court of Roanoke city by the defendant in error, M. N. Packard, trustee, to whom the Southern Electric Company had assigned its assets for the payment of its debts and liabilities.  The action is *assumpsit* for the amount due under the contract, and for the extra work done; the declaration consisting of the com-

mon counts and three special counts. To the declaration there was a demurrer, which, being overruled, the defendant filed a plea of the general issue, a plea of payment with account, a plea of set off with account, and a special plea in the nature of a plea of set off. Issues were joined upon these pleas, and at the December term, 1894, a trial was had resulting in a verdict for the plaintiff for $600, which the court set aside. At the March term, 1895, a second trial was had, and there was a verdict for the plaintiff in the following form:

"We, the jury, find for the plaintiff, and assess his damages at $805.55, with interest from August 5, 1893, and on the offsets claimed by the defendant, we find for the defendant and assess his damages at $204.66, with interest from August 5, 1893."

A new trial was asked for by the defendant, on the grounds that the verdict was contrary to the law and the evidence, misdirection of the jury by the court, and that the verdict was not responsive to the issues submitted to the jury; which motion the court overruled, and the case is before us upon a writ of error to that judgment.

It is not contended here that the demurrer to the declaration was improperly overruled. The errors assigned are:

1. The refusal of the court to set aside the verdict as contrary to the law and the evidence.

2. Misdirection of the jury by the instructions given.

3. The refusal of the court to set aside the verdict as not responsive to the issues submitted.

The instruction asked for by the defendant and refused is as follows: "The court instructs the jury that, under the contract of May 23, 1893, it was the duty of the Southern Electric Company to put in all necessary safety devices, cut outs, and do all other things necessary to make the work contracted for a perfect workmanlike installation, and fit for the purposes designed, that it was also the duty of said company to furnish and use in said work throughout, first-class materials,

and such as would meet the approval of the officers of the Roanoke Electric Light & Power Co., and such as is required by the rules and regulations of the National Board of Fire Underwriters governing such work, and if the jury believe from the evidence that said company failed to meet the above requirements, or any of them, then it has failed in an essential requirement of said contract, and they cannot find any thing for the plaintiff for work done under that contract in this action unless the jury further believe from the evidence that the defendant accepted the work prior to the institution of this suit, knowing the defects above mentioned.''

This instruction is predicated upon the idea that where a suit as to the main item of the account sued on is based solely upon a special contract in writing, in order to justify a recovery there must be both an averment and proof of performance according to its terms, and there can be no recovery upon a *quantum meruit* or *quantum valebat.* In this view we cannot concur, and the instruction we therefore think was properly overruled.

''If a man declare upon a special agreement, and likewise upon a *quantum meruit*, and at the trial prove a special agreement, but different from what is laid, he cannot recover on either count; not on the first, because of the variance; nor on the second, because there was a special agreement. But if he prove a special agreement and the work done, but not pursuant to such agreement, he shall recover upon *quantum meruit;* for otherwise, he would not be able to recover at all.'' ''And the measure of damage in such a case, is the stipulated price, less the sum which it would take to complete the work according to the agreement.'' 2 Chitty on Con. (11 Amer. ed.), 826-7.

Parsons, in his work on Contracts, vol. 2, p. 522, in discussing ''apportionment of contracts,'' says: ''We have seen that when parties make a contract which is not apportionable no part of the consideration can be recovered in an action on

the contract, until the whole of that for which the consideration was to be paid is performed. But it must not be inferred from this that a party who has performed part of his side of a contract, and has failed to perform the residue, is in all cases without remedy. For though he can have no remedy on the contract as originally made, the circumstances may be such that the law will raise a new contract, and give him a remedy on a *quantum meruit.* Thus, if a party is prevented from fully performing his contract by the fault of the other party, it is clear that the party thus at fault cannot be allowed to take advantage of his own wrong, and screen himself from payment for what has been done under the contract. The law will, therefore, imply a promise on his part to remunerate the other party for what he has done at his request; and upon this promise an action may be brought." "So too if one party, without the fault of the other, fails to perform his side of the contract in such a measure as to enable him to sue upon it, still if the other party have derived a benefit from the part performed, it would be unjust to allow him to retain that without paying anything. The law, therefore, generally implies a promise on his part to pay such a remuneration as the benefit conferred upon him is reasonably worth; and to cover that *quantum* of remuneration, an action of *indebitatus assumpsit* is maintainable."

In an action on a special contract for certain work, where the work has been *completed and accepted,* prudence usually requires that the practitioner should not content himself with only a special count, founded on the contract as made, but that he should also insert a *general count* for the price of the work done. Then, if the plaintiff fail to prove the contract *as he alleged it,* or to show that the work was done *as the contract required,* he may notwithstanding recover upon the *general count* the value of the work done and accepted. 4 Minor's Inst. (2 ed.), 622, and authorities cited.

The instructions given by the lower court in this case pro-

pounded the law as stated by the authors above quoted, they in effect instructed the jury that if the work was done under a special contract, and they believe from the evidence that there was a substantial, though not strict, compliance with its provisions, and the defendant accepted the work as done, and received benefit from it, the plaintiff might recover a reasonable compensation for such work, and, in estimating such compensation, the contract furnished the criterion for the measurement of remuneration; that the plaintiff would be entitled to recover the contract price, less such sum as would fully compensate the defendant for the imperfections of the work, or insufficiency of the material used. The evidence tended to show that the work was completed as contracted for, except in so far as the plaintiff was prevented by the fault of the defendant; that the defendant was present all the time during the progress of the work and accepted it as done, without making known his objections therto, and received benefits therefrom, hence, the instructions were proper, and should have been given.

We do not understand from the contract that the work done by the plaintiff was to be inspected and approved by the Roanoke Light & Power Co., and the National Board of Fire Underwriters as a condition precedent to the payment of the contract price, and if it admitted of this construction, it was a condition that might have been waived by the defendant. If the work was not "first-class and thorough in every respect throughout," or "the work had been done negligently and carelessly," at least objection should have been made at the time. In accepting the work done, the defendant admits that it is some benefit to him, and that the plaintiff is entitled to some remuneration. 4 Rob. Pr. 534, and authorities cited.

The issues raised by the pleas of the defendant were to be determined by the jury upon the evidence, which is conflicting and were fairly submitted to the jury by the instructions. Applying the rule that the plaintiff in error is considered as

admitting the truth of the defendant in error's evidence, and all just inferences therefrom, and as waiving all his evidence in conflict therewith, the action of the lower court in refusing to set aside the verdict as contrary to the law and the evidence is without error.

We are further of opinion that the verdict of the jury responded substantially to all the issues submitted. It was free from confusion and there was no difficulty in entering judg ment upon it. In fact it was, under the pleadings, unobjectionable. 2 Bar. Pr., 692-3.

The judgment of the court below is affirmed.

*Affirmed.*